# FORM A

CIVIL RIGHTS COMPLAINT TO BE USED BY A *PRO SE* PRISONER
UNDER 42 U.S.C. § 1983 or
UNDER *BIVENS V. SIX UNKNOWN FED. NARCOTICS AGENTS*

Rev. 10/16

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY

**FILED**
JAMES J. VILT, JR. - CLERK

MAR 23 2026

U.S. DISTRICT COURT
WEST'N. DIST. KENTUCKY

**KHALID A. ZAAHIR**

**MATTHEW BULLARD**

**JORDAN TAYLOR**

**SALEM NAGDY**

(Full name(s) of the Plaintiff(s) in this action)

V.

**LAURA PLAPPERT**

**COOKIE CREWS**

**THOMAS KLATT**

**JIMI WALLACE**

**MELINDA MCCOY; et. al.**

(Full name of the Defendant(s) in this action)

CIVIL ACTION NO. 5-26-CV-78-CRS

(To be supplied by the clerk)

(X) DEMAND FOR JURY TRIAL

(__) NO JURY TRIAL DEMAND
(Check only one)

## I. PARTIES

(A) **Plaintiff(s)**. Place the full name of the Plaintiff in the first blank below, his/her place of confinement, address, and status. Repeat this procedure for each additional Plaintiff named, if any.

(1) Name of Plaintiff: Khalid Abdul-Samad Zaahir

Place of Confinement: Kentucky State Penitentiary

Address: 266 Water Street; Eddyville, KY.; 42038

Status of Plaintiff: CONVICTED (X) PRETRIAL DETAINEE ( )

(2) Name of Plaintiff: Matthew Bullard

Place of Confinement: Kentucky State Penitentiary

Address: 266 Water Street; Eddyville, KY.; 42038

Status of Plaintiff: CONVICTED ( X ) PRETRIAL DETAINEE ( )

(3) Name of Plaintiff: Jordan Taylor

Place of Confinement: Kentucky State Penitentiary

Address: 266 Water Street; Eddyville, KY.; 42038

Status of Plaintiff: CONVICTED ( X ) PRETRIAL DETAINEE ( )

**(B) Defendant(s).** Place the full name of the Defendant in the first blank below, his/her official position title in the second blank, and his/her place of employment in the third blank. Mark the capacity in which the Defendant is being sued. Repeat this procedure for each additional Defendant named, if any.

(1) Defendant Laura Plappert is employed as Warden at Ky. State Penitentiary

The Defendant is being sued in his/her ( ) individual and/or ( X ) official capacity.

(2) Defendant Cookie Crews is employed as KDOC Commissioner at Ky. DOC — Frankfort, Ky.

The Defendant is being sued in his/her ( X ) individual and/or ( X ) official capacity.

(3) Defendant Thomas Klatt is employed as Chaplain at Ky. State Penitentiary

The Defendant is being sued in his/her ( X ) individual and/or ( X ) official capacity.

(4) Defendant Jimi "Michelle" Wallace is employed as Aramark Manager at Ky. State Penitentiary

The Defendant is being sued in his/her ( X ) individual and/or ( X ) official capacity.

2

Address 266 Water Street; Eddyville, Ky. 42038

~~Status of Plaintiff: CONVICTED ( X ) PRETRIAL DETAINEE~~

(4) Name of Plaintiff: Salem Nagdy

Place of Confinement: Kentucky State Penitentiary

Address: 266 Water Street; Eddyville, K.Y.; 42038

Status of Plaintiff: CONVICTED ( X ) PRETRIAL DETAINEE ( )

✳ (B) Defendant(s). Place the full name of the Defendant in the first blank below, his/her official position title in the second blank, and his/her place of employment in the third blank. Mark the capacity in which the Defendant is being sued. Repeat this procedure for each additional Defendant named, if any.

(6) Defendant Jill Robertson is employed as Unit Administrator at K.Y. State Penitentiary

The Defendant is being sued in his/<u>her</u> ( X ) individual and/or ( X ) official capacity.

(7) Defendant Lauren Massey is employed as Deputy Warden at K.Y. State Penitentiary

The Defendant is being sued in his/<u>her</u> ( X ) individual and/or ( X ) official capacity.

(8) Defendant Robin McCalister is employed as "Grievance Coordinator" at K.Y. State Penitentiary

The Defendant is being sued in his/<u>her</u> ( X ) individual and/or ( X ) official capacity.

(9) Defendant Allyson Lambert is employed as "Ombudsman" at KDOC "central office"; Frankfort.

The Defendant is being sued in his/<u>her</u> ( X ) individual and/or ( X ) official capacity

2 a.

(5) Defendant _____ is employed

as _____ at _____

The Defendant is being sued in his/her (____) individual and/or (____) official capacity.

## II.     PREVIOUS LAWSUITS

(A)  Have you begun other lawsuits in State or Federal court dealing with the same facts involved in this action?  YES (____) NO (**X**)

(B)  If your answer to "A" is YES, describe the lawsuit in the spaces below. If there is more than one lawsuit, you must describe the additional lawsuits on another sheet of paper, using the same outline.

Parties to the previous lawsuit:

Plaintiff(s): _____

_____

Defendant(s): _____

Court (if federal court, name the district. If state court, name the county)

_____

Docket number: _____

Name of judge to whom the case was assigned: _____

Type of case (for example, habeas corpus or civil rights action): _____

Disposition (for example, Was the case dismissed? Is it still pending? Is it on appeal?)

_____

Approximate date of filing lawsuit: _____

Approximate date of disposition: _____

3

## III.    STATEMENT OF CLAIM(S)

State here the FACTS of your case. State how you believe your constitutional rights were violated. Describe how each Defendant violated your rights. And set forth the dates on which each event took place. Do not make legal arguments or cite cases or statutes. However, identify the constitutional right(s) you allege was/were violated. If you intend to assert multiple claims, number and set forth each claim in separate paragraphs

**CLAIM I:**        **RELIGIOUS DISCRIMINATION; RELIGIOUS PERSECUTION; DELIBERATE INDIFFERENCE/NEGLIGENCE**

**FIRST AMENDMENT**

Beginning from circa March/April, 2025, and on-going continuously, several administrative + food service officials employed at the Kentucky State penitentiary have been knowingly and intently, under color of the law, acting in concert to discriminate religiously against the Religion of Islam + its followers, Muslims — as opposed to those of Christian and Jewish faiths, — by failing to offer a Halal meal selection or even to compromise the issue by offering Muslims the legitimate option of partaking "Kosher" diet selection, to accommodate the dietary needs of the

4

## III. STATEMENT OF CLAIM(S) continued

Islamic religion. Thereby violating the Plaintiffs' First Amendment rights to freely practice their religion.

In March of 2025, Plaintiffs Khalid Zaahir, Matthew Bullard, Jordan Taylor and Salim Nagdy submitted "Religious Accommodation Requests" to have a Halal diet selection instituted within the Ky. Department of Corrections' prisons for Muslim inmates; the requests each proposed a viable alternative to Halal, in event of policy complications with making the necessary changes, by simply granting Muslim inmates the option of receiving Kosher meals — since the KDOC already offers a Kosher diet selection within its prisons. This provision of the requests for religious accommodation is based on a verse of the Holy Qur'an (surah 5:5), which states: ". . . . The food of the People of the Book[1] is lawful unto you and yours is lawful unto them. . ."

This Qur'anic verse means that Halal and Kosher foods are

---

[1] The term "People of the Book" refers to the Jewish peoples and some ancient sects of Christians (distinguished from modern Christian sects). Both of which observing dietary commandments synonymous with "Kosher." / "Halal."

5

legitimately interchangeable. As such, given the unideal circumstances of a prison setting, and the complex + time-consuming issues involved with policy changes, the Plaintiffs were/are willing to accept the compromise of simply being provided a Kosher diet — at least until the DOC could officially institute a "Halal" diet selection.

As of this filing, the KDOC's "Central Office" has yet to reply to the Plaintiffs' "Religious Accommodation Requests"; the KSP facility's administrators named as Defendants in this action, viz. Laura Plappert (Warden), Lauren E. Massey (Deputy Warden), Thomas Klatt (Chaplain) continue to claim that "they're working on it [approving a Halal meal selection] in Frankfort" — since at least June of 2025, KSP administrators have alleged that "they [i.e. Frankfort] are in the final stages of it now."

As to the secondary compromise — receiving Kosher diet, — which is meant specifically to meet the challenge of protecting the Plaintiffs' rights of religious freedom during the interim of lengthy policy-change process; KSP administrators have tried to force the Plaintiffs to change their religious preference from Islam to Jewish in order to receive a Kosher diet.

This not only is unnecessary by standard of the Qur'an

5 a.

(Surah 5:5) — the sole authority of the Islamic religion, — it is nowhere in the DOC's Policy, "CPP," nor within the DOC's "Kosher Diet Participation Agreement," that an inmate must change his/her religion to Jewish in order to receive a Kosher diet. [ See EXHIBITS #3A + #3B ]

In evidence of this fact, Plaintiff Zaahir was ultimately granted a Kosher diet — without changing her religion from Islam — in early February (or late January), 2026. This was only after much wrangling with KSP administration, and Chaplain Thomas Klatt was unable to dispute that departmental policy did not prevent him from granting the accommodation. Zaahir was later illicitly removed from the Kosher list in a move of retaliation, to be described fuller in the following claim. . .

On several occasions, KSP administrators (viz. Lauren E. Massey, deputy Warden; Laura Plappert, Warden; et. al.) have falsely claimed that CPP 23.1 states that one is required to change his/her religion to Jewish to receive a Kosher diet, though (as we have seen [EX. #3A]) this policy states no such thing. See EXHIBIT #2D. . . Especially where in her reply to Plaintiff Zaahir's grievance, deputy Warden Lauren E. Massey

5 b.

reiterates this fabrication.

Similarly, both the facility's administration and its food service employees would routinely lie about having means to prepare Halal foods — which, in fact, it could have for several years now. See EXHIBIT #1.

Because of this impasse, the Plaintiffs were effectively forced to become vegetarians in order to comply with the dietary commandments of their religion. Yet, the religion of Islam does not require its adherents to be vegetarians. However, as regards meats, the religion's tenets are sternly clear: "Eat not of (meats) on which Allah's Name hath not[2] been pronounced: that would be impiety. But the evil ones ever inspire their friends to contend with you. If ye were to obey them, ye would indeed be Pagans."

[ Qur'an, Surah 6: 121 ]

This verse illustrates the seriousness of the issue of dietary commandments in Islam, and that its requirements are essential

---

[2] **Allah** is the Arabic Name for "God"; ~~Jehova~~ is its Hebrew equivalent. The "Name" being merely a matter of language only, it is the similarity of ritual & solemnity in the slaying of animals for food which render "Halal" & "Kosher" criteria virtually identical.

5 c.

for Muslims to adhere to in observance of the religion. As such, it is an issue that is protected by the First Amendment. The Defendants in this civil action are guilty of violating the Plaintiffs' First Amendment rights in this regard quite flagrantly.

Deliberate indifference + flagrant negligence of the rights of Muslims, specifically — i.e. as blatant, targeted discrimination, as compared with followers of other religious faiths (e.g. Judaism, Christianity, etc.), — is an issue that has been on-going continually for [literally] decades within the Kentucky Department of Corrections, and especially at the Kentucky State Penitentiary facility.

The Plaintiffs assert that these violations/crimes are in fact systemic in nature. Violations described herein are not "isolated incidents" but are reflective of a decades-long administrative persecution of the Islamic religion + its followers (Muslims), which the Plaintiffs — along with thousands of other Muslims — endure daily as residents within KDOC facilities... resulting in extensive, long-term psychological and spiritual torment, as also defilement of the body [with respect to neglect of religious dietary needs].

5 d.

Plaintiffs hereby bring these claims not merely as isolated instances of neglectful violations of rights, but as flagrantly systemic malice towards the Religion of Islam & its adherents — Muslims — being by definition systemic religious persecution.

In March of 2025, Plaintiffs Khalid Zaahir Salem Nagdy, Matthew Bullard and Jordan Taylor each submitted "Religious Accommodation Requests" to KSP facility's chaplain, Thomas Klatt. These RARs were virtually identical, requesting that KDOC facilities either offer Halal meals or else give Muslims the option of receiving Kosher meals; the secondary compromise of taking Kosher involves the stipulation that the Plaintiffs not be required (forced) to change their religious preference. [ KDOC facilities, viz. Ky. State penitentiary has long been in the habit of making the stipulation that one "must" change his/her religion to Jewish in order to partake of Kosher, though there is no such requirement in KDOC policy & procedure (CPP). See EXHIBITS #3A & 3B ]    As of this filing, nearly one full year later, there has been no official response to any of the Plaintiffs' "Religious Accommodation Requests" by

5 e.

III. STATEMENT OF CLAIMS, continued

either KDOC Commissioner Cookie Crews, her Office, nor any of her designees. This, despite that Plaintiff Khalid Zaahir has filed a grievance — circa August, 2025 — decrying the fact that there's no official or reasonable timeframe for KDOC officials in central Office to respond to Religious Accommodation Requests. This grievance, too, has not received any response nor attempt at resolution — despite Zaahir's diligence . . . See EXHIBIT #2A

Following the filing of the Plaintiffs' Religious Accommodation Requests, the Plaintiffs immediately were misdirected by Unit Administrator Amy Fisher and Chaplain Thomas Klatt, both of whom claimed that this was a medical issue and that the Plaintiffs needed to "fill out Sick-calls [Healthcare Requests] & go through medical"; this would be to received a "Vegetarian/Soy" diet, in lieu of Halal or Kosher . . . until [Central Office in] Frankfort "figures something out."

At this time, Plaintiffs Khalid Zaahir, Matthew Bullard, and Jordan Taylor all were housed on CellBlock B, in 7 cell-house — well within earshot each to the other, and thus are each able to bear witness to these events personally, as it relates to each Plaintiff, having verbal interactions with admin-

5 F.

III. STATEMENT OF CLAIMS (continued)

istrators. Plaintiff Salem Nagdy was at the time housed on Cell Block C, in 7 cellhouse. Communications between this Plaintiff and others were conducted primarily by mail, or by yelling loudly across the cellhouse foyer.

After being lied to that Medical was the proper venue to go through for receiving a Vegetarian / Soy / Alternative diet (see EX-HIBIT #2F; Healthcare Request & Reply @ bottom of page), the ball was bounced back to the Chaplain and/or the Unit Adminis-trator. Both of whom then again lied "second-hand", this time that they'd been told by Aramark employee Melinda McCoy "that DOC doesn't have a Soy or Vegetarian meal selection." This, too, is a blatant and obvious lie — disproven even by the DOC's official menu itself (EXHIBIT #2B); for which Plaintiff Khalid Zaahir filed a grievance [EXHIBIT #2B]. Again, the facility has failed to redress this grievance, nor to comply with established timelines for doing so as set forth in CPP 14.6, the KDOC's departmental policy protocol.

Cf. EXHIBITs #2 & #2F: only after several letters from Plaintiff Zaahir to the Department's Dietician, Amanda Durrett, did the KSP facility finally admit to indeed having a Vegetarian / soy / Alternative meal selection; Plaintiff Zaahir

III. STATEMENT OF CLAIMS *continued*

was told in May of 2025 that she would be given an Alternative diet. However, Unit Administrator Amy Fisher then claimed that because of being in Restrictive Housing, the Plaintiff Zaahir had to "wait six months" to begin receiving her alternative diet. Yet, Plaintiff Zaahir had been informed by Deputy Warden Lauren E. Massey that because it concerned a religious issue of dietary requirement, that Plaintiff Zaahir should begin receiving her alternative diet immediately. This information was communicated through the Chaplain's office. Yet there remained no change in actual practice . . . Ultimately, it took for the Plaintiff Zaahir to go on a hunger strike to #1. get the Warden's approval to immediately grant the change to an alternative/vegetarian diet for Plaintiff Zaahir, as a temporary compromise until Frankfort institutes a Halal or Kosher diet for Muslims, and #2. get any kind of "unofficial" response to the Plaintiffs' original "Religious Accommodation Requests." [ which was allegedly that Central Office is "in the last stages" of approval; this being in July, 2025 . . . As of this filing, there's been no further progress apparent. ]

Also immediately following the Plaintiffs' filing of Religious Accommodation Requests in unison, in March of 2025, Chaplain

5 h.

III. STATEMENT OF CLAIMS continued

Thomas Klatt, while making in-person rounds within the Restrictive Housing Unit, asked the Plaintiffs Zaahir, Bullard and Taylor collectively, "Why are you all filing for this vegetarian/soy diet all at the same time?" This was approximately 3 or 4 days after filing the Religious Accommodation Requests, a Wednesday or Thursday. On Tuesday of the following week, without any apparent administrative logic, Plaintiff Jordan Taylor was moved from cell Block B — was in fact moved completely out of the cellhouse, to another unit (3 cellhouse). A day later, Plaintiff Matthew Bullard, also was moved from 7 cellhouse [ again, without any apparent administrative logic for such a move ]; then moved back to the same cell the day after, then a week later, again moved for good out of the cellhouse.

The KSP administration's intent was clearly only to split up the Plaintiffs, who were working together to assert their religious rights protected by the First Amendment. It must be noted that 7 cellhouse is considered a "super-max" RHU, and is the only unit at KSP where is housed the "Transition Unit" (TU) program. At the time of these events, all three Plaintiffs housed on cell Block B — Khalid Zaahir, Matthew Bullard and Jordan Taylor — were awaiting placement in the TU program, being already assigned by Central Office in Frankfort. Administratively, there was at

III. STATEMENT OF CLAIMS, continued

this time no reason or considerations serving departmental interests for moving either of the Plaintiffs from 7 cellhouse. KSP's motive was clear; simply to split up the Plaintiffs in an attempt to keep them from working together & communicating with each other to the ends of asserting their First Amendment religious rights, and thereby showing up KDOC for its wanton discrimination against Muslims.

By virtue of these events & issues in concert, the KDOC & KSP facility effectively force Muslims to become vegetarians in order to fulfill their religious dietary commandments. But the Religion of Islam does not require its adherents to be vegetarian or vegan; only that meats be Halal (or Kosher).

By failing to offer Halal diet selection, on the one hand, and illicitly attempting to force Muslims to "change their religion" to Jewish or denying Kosher, on the other hand, the KDOC & KSP facility effectively force Muslims to either eat foods inconsistent with Islamic dietary tenets — or to become vegetarian. Essentially, the Plaintiffs are denied the opportunity to eat meat simply because they are Muslim.

5 j.

**[ STATEMENT OF CLAIMS** *continued* **]**

That KDOC offers Kosher to Jewish inmates, and caters special meals for Easter and Christmas ( Christian observances), but not offering Halal — is clear discrimination.

That this very issue has been raised several times before within KDOC illustrates the systemic nature of the violations against the religious liberties of Muslims. See EXHIBIT #4 [ 1st item, Grievance dated 3-10-15, is essentially identical to issue of this civil action; others are a collection of examples of blatant discrimination/persecution against Muslims and the Islamic faith, systematically perpetuated throughout the KDOC, and by KSP facility, especially. ]

Defendant Laura Plappert, Warden of KSP facility, has on multiple occasions failed to correct administrative + security staff under her supervision when the latter have clearly demonstrated religious prejudice towards Muslims (ref. EXHIBIT #2 G); as well has perpetuated such discrimination and lies herself [ e.g. that CPP (Policy) 23.1 states that one must "change their religion" to Jewish, to receive Kosher — when this policy, and indeed not a single Departmental policy, states no such thing ( cf. EXHIBITs #3A + #3B) ]. Ref. also EXHIBIT #3 — "Kosher Diet

5 K.

III. STATEMENT OF CLAIMS (continued)

Participation Agreement": Within which references as authority CPP 23.1, which itself does NOT require an inmate to necessarily be Jewish to partake of Kosher.

Even after this was explained clearly to her, through the Chaplain's Office, and the policy(s) in question shown to & explained extensively to her, Defendant Laura Plappert continued — Knowingly & under color of law — to deny the Plaintiffs the right to partake of Kosher diet, to satisfy the dietary commandments of their religion [ Islam ].

This same argument applies to Defendants Cookie Crews, as KDOC Commissioner, and Lauren Eply-Massey, as Deputy Warden. Both were well aware of the circumstances, the truth of the policies' meanings, and the law; Yet both remained active in denying the Plaintiffs' religious rights. Ref. EXHIBIT #2D

These issues of agreement regarding Kosher diet were communicated between Plaintiff Khalid Zaahir & Lauren E. Massey, Laura Plappert and Cookie Crews by Resident Psychologists David Kester and Olivia Estes, & by Resident Psychiatrist Danice Prescott — during negotiations respecting Plaintiff Zaahir's hunger strike, which lasted from circa June 2014,

51.

2025 thru July 7th, 2025.    Thus all three Defendants (Cookie Crews, Laura Plappert, and Lauren E. Massey) were fully aware of all relevant explanations of policy + laws, standard state laws as well as federal, and each continues knowingly, under color of law, to be active in denying/violating the Plaintiffs' First Amendment rights regarding religious freedoms.

Defendants Timi "Michelle" Wallace + Melinda McCoy, both Aramark [ Food Service ] employees at KSP facility, are guilty of actively perpetuating blatant discrimination against Islamic dietary requirements.  Both have flagrantly lied that Halal diet / Halal foods are "not available" from the kitchen.  Ref. EXHIBIT #1.    There is much evidence to the contrary, which any employee of Aramark within KDOC facilities would doubtless be well aware of.  [ Plaintiffs are in the process of attempting to acquire some of this documentary evidence (see EXHIBIT #4A), but are experiencing much difficulty in so doing — and thus advise the court of intent to supplement such evidence at a later date (see accompanying "MOTION FOR LEAVE TO SUPPLEMENT 42 U.S.C. §1983") ]    Also cf. EXHIBIT #2: letters dated May 23

5 m.

& May 19, 2025, from KDOC Dietician Amanda Durrett to Khalid Zaahir also bear evidence to the fabrications of Defendants "Michelle" Wallace & Melinda McCoy, as will the initiating letters from Plaintiff Zaahir to Dietician Durrett ( which Plaintiff Zaahir is also in the process of acquiring & intends to supplement as evidence at a later time ).

That Defendants Wallace's & McCoy's motive behind their fabrications is flagrant and malicious religious discrimination, there is no doubt. See EXHIBIT #2-B

When Plaintiffs were denied access to Koshet foods, following impasse of KDOC not offering Halal for Muslims, and Plaintiffs showed willingness to accept reasonable temporary compromise by partaking vegetarian diet — strictly for religious reasons, — Defendants "Michell" Wallace & Melinda McCoy again blatantly lied, telling Chaplain Thomas Klatt that the KSP kitchen "does not have" a vegetarian or say meal selection, . . . to which, Plaintiff Zaahir then filed an institutional grievance (EX. #23). Nearly a year [i.e. full calendar year, this May, 2026] later, this grievance has not been redressed nor fully responded to, officially

∎

5 n.

Cf. EXHIBIT #2A . . .

On the heels of said grievance, & Plaintiff Zaahir's letters to the state's Dietician (Amanda Durrett) — & Dietician's subsequent e-mails to KDOC/KSP Aramark staff and Chaplain's office, — Chaplain Thomas Klatt then attempted to "sugar-coat" Defendants "Michelle" Wallace's & Melinda McCoy's lies (EXHIBIT #2F) in a letter/memo dated "5-15-25," wherein he even tried to convince Plaintiff Zaahir to "withdraw" her grievance against Defendants "Michelle" Wallace & Melinda McCoy. [ Plaintiff Zaahir declined to "withdraw" her grievance against these Defendants (& indeed, any & every grievance to do with this issue), and has at all times diligently pursued the redress of said grievance(s) — ref. EXHIBIT #2A ]

Within this letter/memo of "5-15-25," Defendant Klatt attempted to "scapegoat" phraseology as an issue of mere "miscommunication" with Defendants Wallace and McCoy, due to Plaintiffs' usage of the terms "vegetarian" and "soy." This is quite absurd as an excuse. Defendant Melinda McCoy is a 20+-year veteran in KDOC Food Service; Defendant Timi "Michelle" Wallace has worked at Kentucky

50.

State Penitentiary since at least late 2022, and presumably within Ky. Department of Corrections for several years before that. "Vegetarian" / "Veggie" / "Soy" / "Alternative" diet selection, or meal, or "tray" — all are common prison vernacular within prison Food Service industry. These terms all are used interchangably, and their meaning is clearly distinguished among anyone working in Food service in Ky. adult institutions beyond a few months' time. Thus is it utterly inconceivable that any years-long veteran of KDOC Food Service would be confused by this terminology (especially where it is explained to such a one that the inmate's reason is of religious nature).

Defendants "Michelle" Wallace's & Melinda McCoy's lies were doubtlessly deliberate, and intently malicious, under color of the law. Further, Plaintiff Khalid Zaahir has worked in KSP's kitchen alongside both Defendants Michelle Wallace & Melinda McCoy, and can testify under oath via first-hand personal knowledge that BOTH of these Defendants are very much familiar with the usage & meaning of ALL of these terms [ "Halal" / "Kosher" / "Vegetarian" / "Veggie"/ "Soy" / "Alternative" / diet selection / meal, "tray," etc ],

5 p.

& indeed has heard both Defendants themselves using each of the terms frequently — and correctly — while working in the kitchen. **Ref. EXHIBIT #43:** Affidavit of Khalid Zaahir (Plaintiff), dated March 18, 2026.

Under color of law & with full knowledge of their actions, each of the Defendants named above did, having malicious intent and blatant disregard for the Plaintiffs' constitutionally-protected First Amendment rights to freely practice their religion, act individually and in concert to religiously discriminate against and to persecute the Religion of Islam & its adherents [ Muslims ] systemically.

Whereby each & all of the Plaintiffs suffered extensive psychological distress, spiritual turmoil, and forced defilement of their bodies with unholy foods — as a direct result of said persecution & deliberate indifference, under color of the law. As of this filing's date, such violations of the Plaintiffs' First Amendment rights continue on-going & continuously ( & systemically ) . . . as does the Plaintiffs' profound psychological distress & spiritual turmoil.

5q.

CLAIM II :                    RETALIATION; INTERNAL
                              CORRUPTION; CRUEL &
                              UNUSUAL PUNISHMENT/
                              INHUMANE TREATMENT


EIGHTH AMENDMENT
( & FIFTH AMENDMENT )


By virtue of the systemic nature of the above-described violations against the Plaintiffs' rights, and the continuous length of time it is allowed by KDOC administrative officials, Departmental administrators are thus guilty also of INHUMANE TREATMENT / CRUEL & UNUSUAL PUNISHMENT against the Plaintiffs' Eighth Amendment rights.

RETALIATION and INTERNAL CORRUPTION is also being allowed systemically, thereby violating both the Fifth and Eighth Amendments.

Defendants Cookie Crews (KDOC Commissioner) and Laura Plappert (Warden) — as well as Defendants Lauren E. Massey ● (Deputy Warden) & Allyson Lambert (KDOC Om-

5 r.

budsman) — have, through deliberate indifference, wanton negligence, and even calculated failure to redress issues/ rectify illicit behavior of their subordinates, perpetuated a multitude of systemic violations/crimes against the Plaintiffs' religious freedoms, and indeed against the Religion of Islam itself, as well as violations against the Plaintiffs' humanity.

By virtue of these violations against the Plaintiffs' First Amendment rights, Plaintiffs are thereby deprived of their religious liberties protected therein — which itself is an infringement upon the Fifth Amendment. That these violations are clearly retaliatory in nature, deliberate and malicious, renders these acts of internal corruption flagrant infringement upon the Plaintiffs' Eighth Amendment rights against cruel + unusual punishment/inhumane treatment.

Defendant Robin McCalister, KSP Facility's "Grievance Coordinator" has routinely and systematically failed to ensure proper redress of E + compliance with timelines as mandated by policy for I grievances — Well beyond any reasonable sense of possible "oversight" or innocent "mix-up." On the contrary, Defendant Robin McCalister's actions are unquest-

5 s.

ionably deliberate / maliciously intended / retaliatory; as are those of her ultimate supervisor, Ombudsman Allyson Lambert. See EXHIBIT #4B: (letter to Defendant Allyson Lambert from Plaintiff Khalid Zaahir, and previous reply from Defendant Allyson Lambert — dated 23 January, 2024 + January 11, 2024, respectively.)   Ref. EXHIBIT #2A . . .

Plaintiff Zaahir likewise can attest that Plaintiffs Bullard + Nagdy have as well several grievances unresolved for egregious amounts of time, deliberately, and have likewise contacted Defendant Allyson Lambert without result; of which, such evidence is to be provided at a later time (ref. "MOTION FOR LEAVE TO SUPPLEMENT 42 U.S.C. §1983," accompanying this filing)

Defendants Jill Robertson, Melinda McCoy, Timi "Michelle" Wallace — and ultimately Defendant Klatt, as he, an administrator, deferred to mere "food service" workers in the issue — were all instrumental in retaliating against Plaintiff Khalid Zaahir in particular, regarding Plaintiff Zaahir fasting during the month of Ramadhan. . . As Plaintiff Zaahir had already forced

5 †.

the issue that there was nothing in policy which pro-hibited her from receiving a Kosher diet, as a Muslim. Ref. EXHIBITS #3 thru #3B

circa mid-January, 2026, Plaintiff Zaahir was finally included on the Kosher list — WITHOUT changing her religion from Islam, — & began thus to regularly receive her Kosher diet.

The year 2026, by lunar-solar calendar calculat-ions, the Islamic month of Ramadhan [ in which Muslims observe a religious fast for either 29 or 30 days ] began February 18. On or about February 13, 2026, Defendant Thomas Klatt (chaplain) paid a visit to Plaintiff Zaahir & stated to her that "Michelle [ Wallace ] says you have to choose, do you want to do Ramadhan or do you want to stay on Kosher? You can't do both." At this time, the Plaintiff had already been approved by the chaplain, an administrator, to be on the list of fasting Muslims ("Ramadhan list") — as well as remaining on the Kosher list. As these two are not mutually exclusive, the fast being AN OBSERVANCE [ of religious rite ] and Kosher being a DIETARY SELECTION [ in accord with religious command-

5 u.

ments ], there is no conflict with any departmental policy, and the Plaintiff Zaahir was well within her rights to fast during Ramadhan & to receive a Kosher diet.

Further, the position being put forward by food service [who, officially, had nothing in the way of authority against a chaplain's orders/memorandums/approval, etc. ] was that the Plaintiffs would have to eat unsanctioned foods in order to be permitted to fast during Ramadhan. The alternative, then, would be that in order to be provided foods consistent with their religion, the Plaintiffs would be forced to not fast during the month of Ramadhan.

Chaplain Thomas Klatt, after having already approved Plaintiff Zaahir — in accord with actual policy — for both Kosher diet & to fast for Ramadhan, then deferred to Defendants Wallace & McCoy and removed Plaintiff Zaahir from the "Ramadhan list." Plaintiff Zaahir never agreed to this, and refused to "sign herself off" either the Ramadhan or Kosher lists. For approximately eight (8) days — the Plaintiff Zaahir was forced to save her food throughout the day in sandwich baggies & styrofoam cups, until sunset, in order to observe her religious fast.

Following a series of letters from Plaintiff Zaahir to Amanda Durrett [dietician] & Religious Director Janet Conover, describing the insubordination and First Amendment violations going on at KSP facility, Defendant Thomas Klatt — on February 27, 2026 — again paid visit upon Plaintiff Khalid Zaahir @ her cell, this time saying that he had been told ( by Defendants Lauren E. Massey & Laura Plappert, allegedly ) to "take her off Kosher." Hours later Defendant Jill Robertson (unit administrator) also paid visit upon Plaintiff Zaahir @ her cell to reiterate precisely the same information that Chaplain Klatt had just discussed with Zaahir — despite that Plaintiff Zaahir had again explained CPP policies 23.1 & 11.4 to her (and to Chaplain Klatt) in great detail...

The Plaintiff Zaahir again refused to "sign herself off" of either the "Ramadhan list" or of the Kosher diet. She was forcibly removed from the "Kosher list" — as Zaahir vehemently refuses to "change her religion" from that of Islam.

The Chaplain then reinstated Plaintiff Zaahir onto the "Ramadhan list." Thereafter [as had began weeks earlier], a series of malicious retaliations against the Muslim Community — & Plaintiff Khalid Zaahir,

5 v.

in especial — persisted with greater & greater frequency. See EXHIBIT #2H.

Note: The following dates' e-mails may necessarily be Subpoenaed by authority of the Court, as evidence...

February 19, 2026:

By Sgt. Julie McCloud          To Chaplain Thomas Klatt
   Lt. George Whelan          + KSP Kitchen / Alexander
   Lt. Benjamin Alexander

February 20, 2026

By Chaplain Thomas Klatt        To Lt. George Whelan
                              + Vice Versa

These concern a variety of "complications" regarding Ramadhan meals received in RHU and in General Population, well after the breaking of the fast for the day. In some cases, it was well over 2 full hours late. February 19 & 20 were exemplary of this blatantly indifferent disregard for the requirements of the fast.

Again, Departmental administrators (such as Defendant Laura Plappert [Warden]) persist in wanton negligence and deliberate indifference to such issues and to the subordinates who are responsible for defying memos and departmental policy. See EXHIBIT 2E.

It should be noted, as well, that according to how the facilities operate with respect to Ramadhan — when Plaintiff Zaahir was initially removed from the "Ramadhan outcount list" this effectively denied her the participation in the celebratory festival of Eid al-Fitr, its observance being manifested in a community prayer service + a feast. Plaintiff Zaahir was retaliated against after bringing this to the attention of Religious Director Janet Conover, in Frankfort's "Central Office."

That such routine disregard for the sacredness of the month of Ramadhan — and even such elements of retaliation — is not only deliberate but is systemic is quite easily evidenced. Cf. EXHIBITs #2G, #2C & #4.

KDOC, and KSP facility in particular have long been in an obstinate state of tyranny towards both Muslims + the Religion of Islam itself. Both in official and in individual capacities the above-named administrators and prison officials have actively perpetuated various forms of internal corruption and retaliation,

5 w.

to effect an environment of systemic religious persecut-
ion against Muslims — thereby knowingly and intently, under color
of law violating the Plaintiffs' Eighth and Fifth Amendment
rights'... resulting in profound, lasting and traumatizing
psychological + spiritual distress of each and all Plaintiffs
named herein.

5x.

## IV.    RELIEF

State exactly what you want the Court to do for you. (If you seek relief which affects the fact or duration of your imprisonment (for example - release from illegal detention, restoration of good time, expungement of records, release on parole), you must also file your claim under 28 U.S.C. §§ 2241, 2254 or 2255.) The Plaintiff(s) want(s) the Court to:

   X    award money damages in the amount of $ *70,000.00 (each Plaintiff)*
                 *For Psychological distress, spiritual turmoil*

   X    grant injunctive relief by *Order Ky. DOC to provide Halal diet selection (or offer muslims Kosher w/o changing religious preference)*

   X    award punitive damages in the amount of $ *100,000.00 [one hundred thousand]*

         other: _____

## V.    DECLARATION UNDER PENALTY OF PERJURY
### (each Plaintiff must sign for him/herself)

I, the undersigned, declare under penalty of perjury that the information contained in this document is true and correct.

This **19** day of *March*, 20**26**

_____
(Signature of Plaintiff)
*Khalid A. Zaahir*

_____
(Signature of additional Plaintiff)
*Salem Nagdy*

_____
(Signature of additional Plaintiff)

I hereby certify that a copy of this complaint was delivered to the prisoner mail system for mailing on *March 19, 2026*

_____
(Signature)

6

SPI / KSP
KY 42038

# USPS GROUND ADVANTAGE™

**US POSTAGE & FEES PAID IMI**

☒ Stamps.com
0635000143325
19718119
FROM 42038

GROUND ADVANTAGE
Cubic .10
Commercial

03/20/2026

0001

C071

SHIP
TO:

INMATE KHALID ZAAHIR 139980
KENTUCKY STATE PENITENTIARY
266 WATER STREET
EDDYVILLE KY 42038

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
FEDERAL BUILDING
423 FREDERICA ST STE 126
OWENSBORO KY 42301-3013

**USPS TRACKING #**

9434 6501 0579 6021 3890 46